Syllabus.

# Richmond.

## CRALLE v. CRALLE.

### May 1, 1884.

1. ABSENT DEFENDANTS—*Judgments Against*.—Under Code 1873, chapter 166, section 16, defendants not served with process and not appearing, may, if not served with copy of judgment more than a year before the end of five years from its date, within such five years, have the case reheard; and if so served more than a year before the end of such five years, may do so within a year from such service.

2. HUSBAND AND WIFE—*Divorce—Evidence—Admissions*.—In suit for divorce the admissions of the plaintiff are competent evidence to support the averments of the answer.

3. IDEM—*Idem—Rehearing—Maintenance—After Acquisitions—Case at Bar*.—Where husband in 1874 obtained upon order of publication against absent wife, decree of divorce *a vinculo matrimonii* for wilful desertion for five years, and in 1876 wife asks for rehearing and for alimony, and proves at rehearing, by plaintiff's admissions and otherwise, that the desertion was not wilful, in fact not *hers*, but his:

HELD:
   1. The plaintiff's admissions are admissible evidence to support the allegations of the defendant's answer.
   2. She might have asked to have the decree of divorce set aside; and though not asking for that, she is entitled to her support out of plaintiff's estate.
   3. Equity, regarding substance rather than form, will treat her answer as a cross-bill, and give her what on the latter she would be entitled to. *Mettert's Adm'r* v. *Hagan*, 18 Gratt. 231.
   4. But in estimating the allowance for alimony, no account should be taken of acquisitions by the plaintiff after the date of the decree of divorce.

4. CURTESY—*Dower—Maintenance*.—Curtesy and dower are barred by decree of divorce *a vinculo*, and the same principle applies to maintenance in the absence of any provisions in the decree as to the parties' property rights.

Appeal from decree of circuit court of Nottoway county, rendered 30th September, 1880, in suit of George A. Cralle against Louisa W. Cralle, for a divorce *a vinculo matrimonii*, on account of her alleged wilful desertion of him for five years. She was a non-resident of this state when the suit was instituted in 1874, and the divorce was decreed. In 1876 she filed her petition, praying that the cause be reheard, and that alimony be decreed her. By the decree complained of alimony was allowed her, to-wit: twenty-five dollars a month, the amount of the allowance being estimated with reference to the acquisitions of property made by the plaintiff since the date of the decree of divorce. From this decree the said George A. Cralle obtained an appeal and *supersedeas*. The remaining facts and proceedings are stated in the opinion of the court.

*H. L. Lee*, for the appellant.

*Wm. H. Mann*, for the appellee.

LEWIS, P., delivered the opinion of the court:

The appellant filed his bill in the court below for a divorce *a vinculo matrimonii*, on the ground of desertion for a period exceeding five years by the wife, the defendant, who is the appellee here. The latter, being a non-resident of the state, was proceeded against by order of publication, and upon the hearing at the May term, 1874, a decree was entered in accordance with the prayer of the bill. The cause was thereupon retired from the docket, but, in the language of the decree, "to be reinstated at any time, to the end that, from time to time hereafter, the court may make such order as it may deem expedient and proper in regard to the care, custody and maintenance of the child, born of said marriage, during her minority, and as well in regard to alimony, if any, and what amount shall be allowed to the wife." Subsequently, on the 27th day of Sep-

tember, 1876, the defendant filed her petition, in which, refer-ring to the proceedings that had been had, she denied that she had left the house and home of the plaintiff without good and sufficient cause, and prayed that the cause be reinstated, that she be allowed to take the necessary steps to protect her interests, and that a reasonable allowance for her maintenance be decreed her out of the estate of the plaintiff. The cause was accord-ingly reinstated on the docket, and afterwards, by leave of the court, the defendant filed her answer. In the answer she says : " It is true, as charged in the bill, that this respondent left the bed and board of the complainant in the summer of 1855, but she denies most emphatically the statement of the bill that the said abandonment and desertion was without just cause. On the contrary, she now solemnly asserts that but for the brutal cruelty of the said complainant, and the violation of his mar-riage vows, as he himself confessed to her, she would, on account of her then unborn daughter, have remained in the house of her husband, and been to him a faithful, true, and affectionate wife. She now solemnly states, that while she was the wife of the complainant, and living with him, that he cursed her, and used towards her the most profane and vulgar language; that he struck her in the face with his hand ; that, on one occasion, he even raised a chair over her with the intention of striking her, and several times struck her with the lash with which he whip-ped his negroes; that he also kicked her, and this treatment being only a few weeks before the birth of her child, and she being utterly powerless to protect herself, she could do nothing else but leave the house of her cruel and unnatural husband, and seek the protection of her own father's home; that she was frequently ordered to leave by the complainant, who told her that he would never give her any clothes, and that life should be no pleasure to her. And so she left the home of her husband, and went to her father's house with a blighted life and ruined hopes. And fearing to return to such a husband, and to trust herself and child within the power of his cruelty, she has

since maintained herself and child by honest toil rather than return to him, who could not in his bill state that he had performed his covenant and been ever true to his marriage vows."

The cause was referred to a commissioner to ascertain the value of the plaintiff's property, and what would be a fair annual allowance for the support of the defendant to be paid by the plaintiff. The account was duly taken and returned by the commissioner, to which the plaintiff filed several exceptions, the ground of the second being that the commissioner estimated in the allowance, proper to be made the defendant, the acquisitions of the plaintiff subsequent to the date of the decree of divorce. The exceptions, however, were overruled, and the court, being of opinion that the sum of $25 per month would be a fair allowance for the defendant's support, decreed that the plaintiff pay to her or to her attorney that sum on the first day of each month until the further order of the court, and from that decree an appeal was allowed by one of the judges of this court.

The statute, Code 1873, chapter 166, section 16, in respect to judgments and decrees against non-resident or other defendants not served with process, provides as follows: "Any unknown party or other defendant who was not served with process, and did not appear in the case before the date of such judgment, decree or order, or the representative of any such, may, within five years from that date, if he be not served with a copy of such judgment, decree or order, more than a year before the end of the said five years, and if he be so served, then, within one year from the time of such service, petition to have the case reheard, and may plead, answer, and have any injustice in the proceedings corrected." Upon the rehearing thus provided for, the right is given to make defence, and with the same effect as if made before the judgment or decree complained of was rendered. We have then to inquire, 1. Whether injustice was done the appellee by the decree of May term, 1874; and if so, then, 2. Whether the appropriate relief was afforded her by the decree of which the appellant now complains.

VOL. LXXIX—24.

There is no doubt that, upon the proofs now in the cause, the abandonment of the plaintiff by the defendant was not without just cause, as alleged in the bill, but was justifiable under the circumstances. The evidence fully sustains the averments of the answer in respect to the harsh and cruel treatment she received at his hands, and which drove her to seek shelter and protection elsewhere. Her condition at the time of her arrival from his house at the home of her father, is described by the witnesses, of whom her mother, Mrs. Williams, testifies as follows: "She (the defendant) showed me the cruel marks and bruises on her arms and shoulder inflicted by the lash in his (the plaintiff's) hands. I saw the bruises with my own eyes, and he himself confessed to me that he had treated her cruelly, and had struck her." Similar admissions on his part are testified to by other witnesses who were examined for the defendant. And these admissions are not only competent evidence in support of the averments of the answer, but are evidence of the most satisfactory character. 2 Bishop on Mar. and Div., § 664; *Bailey* v. *Bailey,* 21 Gratt. 43; 1 Minor's Insts. 268.

The defendant was, therefore, justifiable in leaving the plaintiff as she did; and having been thus compelled to leave for her own safety and protection, the desertion in the eye of the law was his, not hers. And hence it follows that he, not she, was the guilty party when his suit was brought and the decree of divorce was rendered. Reeve's Dom. Rel. 207, *et seq.;* 1 Bishop on Mar. and Div., § 791, *et seq.* Indeed, had she appeared in the suit before that decree was rendered, and by cross-bill denied his right to a decree, and prayed for such a decree in her own favor, accompanied by a provision for maintenance out of his estate, it would have been plainly the duty of the court, upon the facts as they now appear, to have decreed in her favor. The case is not, therefore, an application for maintenance by a wife who is the guilty party, although a decree in favor of the husband was rendered against her, but of one who having no notice of the suit, seeks now to have the injustice corrected which has been done her in her absence.

It is true she is not asking to have the decree set aside, as she might have done, but for a support out of the plaintiff's estate. But there is no reason why she should be refused the relief she seeks because less is asked than might have been claimed. Nor is there any reason to withhold the relief to which she is justly entitled because of any objection to the pleadings in the form in which they are. It is the boast of equity that it regards the substance and not the forms of things. And hence it is that pleadings not technically in the form required by the strict rules of pleading will often be so treated as to attain the ends of justice. This is illustrated by the case of *Mettert's Adm'r* v. *Hagan,* 18 Gratt. 231, where an answer was treated as a cross-bill, although not asked to be so treated by the defendant, and a decree entered according to the rights of the parties. ` And such instances are of frequent occurrence. For the same reason, therefore, the petition and answer in the present case may be treated as a cross-bill, and a decree entered accordingly. For the appellee being, as we have seen, not the guilty party, and herself entitled to a decree of divorce, the effect is the same as if, having originally appeared and filed a cross-bill for such a decree and obtained it, she were making in addition a similar claim to that she is now asserting.

We are of opinion, therefore, that the circuit court did not err in exercising the discretion conferred by the statute in respect to the estate of the parties, and in directing an account to be taken to ascertain a proper allowance to be made the appellee out of the plaintiff's estate for her maintenance and support.

But the court did err in overruling the plaintiff's second exception to the commissioner's report. That exception was based on the ground that the commissioner estimated in his allowance the acquisitions of the plaintiff after the date of the divorce decree. It appears that after the date of that decree, and several years after the filing of the defendant's petition, the plaintiff acquired certain estate by devise, which was included by the commissioner in his estimate as to the proper allowance for the

defendant out of the estate of the plaintiff. The exception ought to have been sustained.

In *Porter* v. *Porter*, 27 Gratt. 599, it was held that the husband's right of curtesy in the wife's lands was barred by a decree of divorce *a vinculo matrimonii*. And in *Harris* v. *Harris*, 31 Gratt. 13, it was said that upon the principle asserted in *Porter* v. *Porter*, it would seem, by analogy, that the same rule would apply to the wife's right of dower in the absence of any special provision in the decree in respect to the property rights of the parties. And the same doctrine is laid down by Bishop, who says that the effect of such a decree is to put an end to all rights depending upon the marriage, and not actually vested. 2 Mar. and Div , § 705, *et seq.* And Prof. Minor, while not fully concurring in these views, declares that the rights of neither party will extend to after-acquired property. 1 Insts. 278. Such being the effect of a decree *a vinculo*, and the defendant not asking that the decree in this case be set aside, it was error to include in the estimate of the commissioner such property as was acquired by the plaintiff after the date of the decree. To this extent, therefore, the decree complained of is erroneous and must be reversed, and in other respects affirmed.

LACY, J., dissenting, said:

I concur with the opinion just delivered, so far as it reverses the decree of the circuit court of the 30th of September, 1880 ; but as I do not concur with the reasoning of the opinion nor entirely in the conclusion arrived at, I have prepared the following as my own view of the case:

The parties were finally separated from each other by the abandonment by the wife of her husband's home in 1855, and her answer in this case, so largely quoted in the opinion of the majority, was filed in the year 1880, after the lapse of twenty-five years since she had left her husband.

If a suit for divorce is to be heard and decided upon the ad-

missions or statements of the parties, then the answer of the defendant presents a statement of, and discloses a case of the utmost atrocity and cruelty, which would stamp the husband as infamous indeed. But after a silence of so many years, this terrible arraignment should be cautiously received. The husband in his bill and in his deposition entirely denies the allegations of the same; declares that he never touched his wife unkindly, never struck her in his life, and never, during the period of their living together, was, in any wise, false to his marriage vows; that his wife brought with her when they were married a servant maid, whom he suspects as the author of her unjust suspicions toward him.

But I understand the law of this state to be, as provided in sec. 9, ch. 105, "Such suit shall be instituted and conducted as other suits in equity, except that the bill shall not be taken for confessed; and whether the defendant answer or not, the cause shall be heard independently of the admissions of either party in the pleadings *or otherwise.*" This is the statute of this state. An ancient canon of the law provides, that "inasmuch as matrimonial causes have been reckoned and reputed among the weightiest, and, therefore, require the greatest caution when they come to be handled and debated in judgment, especially in causes wherein matrimony, having been in the church duly solemnized, is required upon any suggestion or pretext whatsoever to be dissolved or annulled, we do strictly charge and enjoin, that, in all proceedings in divorce and nullities of matrimony, good circumspection and advice be used, and that the truth may (as far as possible) be sifted out of the depositions of witnesses, and other lawful proofs and evictions, and that credit be not given to the sole confession of the parties themselves, however taken upon oath, either within or without the court." This canon is in spirit and effect, probably in letter, common law in this country, our courts having uniformly proceeded upon its principles.

Some of the states, moreover, have substantially incorporated

it in their statute law, while in others the common law has, as to confessions, been considerably modified by statute, the chief modification being that, in some of the states, it is provided that confessions be not at all received. As to the law upon this subject in Virginia it is plain and unequivocal, and, so far as I know, no attempt has ever been made by the courts in this state to evade or to disregard it.

If this principle is adhered to, and this statute respected, there is no evidence in this record to sustain the allegations of the answer. There is no proof taken to sustain it; none attempted in the community in which these parties lived and cohabited as husband and wife. Witnesses in that community have been called for other purposes, but they give us no proof upon the allegations of the answer.

Let us consider briefly the proof upon which these allegations rest. The answer itself prepared twenty-five years after the alleged cruelty; the statement of the father of the wife that the husband confessed, or rather voluntarily admitted to him that he had misused his wife; the statement of the mother of the wife that the husband admitted to her that he misused his wife; the statement of the sister to the same effect. All these declarations coupled with the assertion that the husband had traveled some hundred and fifty miles to induce his wife to return to his home.

These witnesses all say that the wife was near her confinement and showed marks of blows and pinches upon her person. These witnesses testify as to these statements twenty-six years after they are alleged to have been made. With the best intentions the most disinterested witnesses are not very much to be relied on when they undertake to detail conversations which have occurred twenty-six years before. The husband, it may be remarked, utterly denies these statements as without any foundation in fact. If he had been thus brutal and cruel to his wife, and had driven her from his home with the lash and kicked her in the abdomen shortly before her confinement, why should he

go so far and so abase himself to her family, and make such dangerous admissions in the father's house, in order to induce her to return to a bed and board where she had been so unwelcome?

And if he did do all these things, why did the wife and her father and her mother and her sister wait for over a quarter of a century to make these things known, and take no steps to punish such a brute? And why did no body in the neighborhood, and no inmate of his house, hear anything about it all? These are questions not easily answered.

A man who thus acts would try in vain to conceal his conduct from his neighbors. Men who thus act are quickly discovered and at once marked and despised by all who know them, and such acts become quickly matters of public notoriety.

The husband says the cause of the disagreement was his objection to his wife's going to her home at that time as she desired, and that his objection was because of the distance, the expense being more than he could safely undergo. Can explanation be given for this long delay in making complaint, and seeking redress? When we turn to the record we find that at that time the husband was without property; that soon after the failure of his efforts at reconciliation he returned to his wife all her property which she had brought to the marriage, including the female slave in question, and that they saw no more of each other, although for ten years the wife continued to live in Virginia, and did not go to the state of Tennessee until after the close of the late war. That in 1874 the husband brought suit for divorce which was regularly proceeded in, and the divorce decreed on account of the abandonment of the wife, the decree being absolute and either party by its terms being left free to contract marriage. Still nothing is heard from this former wife until in the year 1875. The said husband received two hundred acres of land and an interest in a mill worth $1,000. The cause was removed from the docket on the 4th of May, 1874. This property was received in 1875, and

although the former wife was living so far away we find that quickly on the 2d day of February, 1875, an order was entered in the cause; this time nothing was done but to continue it. In the next year the former wife filed her petition to reinstate the cause. This was twenty-one years after the separation, but just one year after the former husband received this property. Nothing more was done however under this petition, until, in 1879, the husband, by bequest from an uncle who died, received a legacy of $5,000. In her petition the former wife had contented herself with a statement that she had sufficient cause for leaving her husband when she did. But she filed the above mentioned answer early in the year 1880, in which the very injurious charges are made against her husband, so that she not only waited all these years to make these charges of brutality, but she did actually appear and present her case to the court and ask for some of the first property her husband had received, and did not then, in thus presenting herself before the court, make any charge of brutality against her husband.

Under what stimulus she acted to make these dark and damaging charges which have so affected the courts we are left to conjecture. Now if these things were true, ought they not to have been made against the husband within a reasonable time? Does not the statute cited above require that these suits must be proceeded in as other suits in equity, except as to confessions and admissions. And in any suit brought by a suitor in 1880 for a cause of action which accrued in 1855, would not the suitor be expected to explain, to account for the delay, or have it imputed against him for *laches* in thus sleeping on his rights for so many years? We are told in the learned opinion just read, that her answer should be treated as a cross-bill; but was there any necessity for her to wait until he brought suit? In all these years many persons have died, and the lapse of time brings lapse of memory, while it is difficult, if not impossible, to remember conversations accurately after the lapse of twenty-six years, it is equally difficult to disprove and rebut statements

thus made after so great a period of time. I will now remark that the answer did not ask to have the decree set aside as to the divorce, that is allowed to stand, and still stands; so that the parties stand divorced, and that status is fixed as of the date of the decree, and at the suit of the husband and because of the abandonment of the wife. But under such decree she asks for alimony; under the rules of law is she entitled to it? If she is entitled to it, I concur with the opinion just read, that it must be in the property of the husband at the time of the divorce.

Upon a divorce of this nature, the wife can have no claim to the future earnings or acquisitions of the husband any more than upon his protection, society or other conjugal rights or duty; he is alike discharged from them all. And if nothing upon the divorce can be given to her, or less than may be suitable to her rank and condition in life, by reason of the husband's poverty, it is her misfortune to which she must submit.

See *Chenault* v. *Chenault*, 5 Sneed, 248, and *Howe* v. *Howe*, 4 Nev. 469, Mr. Minor says upon this subject, that no claim at all can arise on the part of either consort to the after acquired property of the other.

I am of opinion from the evidence and the pleadings in this record, that if the wife had been aware of this principle, she would never have filed either her petition or the answer to which we have referred.

Upon the point raised in the cause that the wife is not entitled to alimony when the divorce is at the suit of the husband for her abandonment, I find many cases decided both in England and in the states of this Union which hold that when the wife is the offender she cannot have alimony on a divorce decreed in favor of the husband. So long as he has committed no breach of marital duty he is under no obligation to provide her a separate maintenance, for she cannot claim it on the ground of her own misconduct. But under our law the question is left with the courts and must depend largely upon the circumstances of each case; and, as has been well said, when we look at this point, not

as one of legal principle but as touching considerations of human frailty, and the forbearance toward it to which the merciful mind is prompted, we are led to the conclusion that in some cases the weight of justice presses too heavily upon a frail woman whom it thus deprives of the means of an honest livelihood. The English parliament had a practice, in granting divorces from the bond of matrimony to the husband, of always requiring him to make some provision for his discarded wife; and Chancellor Walworth, in decreeing in favor of the husband a separation from bed and board on account of the wife's cruelty, said he would give her alimony if it were in his power, and recommended the husband to accord it voluntarily. See 2 Bishop on Mar. and Div. § 377.

The case of *Latham* v. *Latham*, 30 Gratt. 307, has been cited as a case upon this point, but it cannot be so regarded. The alimony was refused, but the divorce was also refused.

In this case, if the wife had come within a reasonable time and made her complaint and *proved it*, I would have regarded it as right to make a fair division of the property between them. But the parties agreed among themselves nearly thirty years ago, that each take the property which came through them; the husband voluntarily delivering to the wife all the property she brought to the marriage, a division which was advantageous to the wife at that time. He sought to take back the wife and the child, but he was refused, the wife preferring to take her property, and he having none, to keep the child.

The child has grown to full age and married, and received from her father property coming from her grandfather of $1,900. If the father contributed nothing to her support, on the other hand the mother has had the society and comfort of the daughter's help. And the husband has married another wife, and has another family growing up around him. And as in no case the former wife can get his after acquired property, and has so long rested under the separation and division of property had between them twenty-nine years ago, I am of opinion, with all

deference to others who differ, not to disturb the decree which was first entered.

The decree appealed from, upon its face, is obviously unjust and inequitable. The estate of the husband is reported as worth $5,072. The commissioner reported $350 per year as a proper allowance to the former wife; the court decreed $300 per year, in monthly instalments. Now, by a simple calculation, the whole income from this fund at six per cent. appears to be $304 32. Now, in a fair division of the estate between the former husband and former wife, how could the court consider it just to give the whole estate to the former wife; or, in other words, to give of the $304.32, $300 to the former wife, and leave only $4.32 for the husband and his present family? upon the ground perhaps that the husband must labor for the support of these; but we must remember that it is only by the labor of the husband, and his constant and unremitting labor, that he can make this property, which is chiefly a tract of land, yield this $304.32 of income. Without his labor and care it would yield but little. And it is not easy to realize such a per cent. upon the value of property, under the present system of management, under the best circumstances, and, as a net result, it may perhaps be properly stated as an impossibility. This decree should be reversed and annulled.

Decree reversed in part, with costs to the appellee.