# Staunton.

## CLEEK v. McGUFFIN.

### September 22d, 1892.

JUDICIAL SALE—*Liability of purchaser's sureties—Res judicata.*—Land de-vised to Mrs. McG. was sold to her husband to pay testator's debts, and C and others were sureties for the purchase-money. He failed, and a commissioner ascertained those debts to be $3,038.63, and that husband was entitled to the balance of $1,812.04, " in right of his wife." Report was confirmed, and the land decreed to be resold, unless hus-band pay the $3,038.63 in a stated period. He did not comply. The land was resold, with the sureties' knowledge, for enough to pay the debts. Mrs. McG. afterwards obtained an absolute divorce, and judgment was rendered in her behalf against the sureties for the $1,812.04, with which husband had been credited " in right of his wife."

HELD :

Husband, as tenant by the curtesy, was entitled only to the use o the surplus of $1,812.04 during the marriage, because that sur-plus continued impressed with the character of realty, and the decree relied on as an adjudication that the $3,038.63 was *all* the sureties were liable for was only an adjudication of the amount necessary to discharge the testator's debts.

Appeal from decree of circuit court of Bath county, ren-dered at its September term, 1889, wherein Cleek and others, sureties of James McGuffin, were complainants, and Mrs. Nancy R. McGuffin and others were defendants. The decree being adverse to the complainants, they appealed. Opinion states the case.

*George M. Cochran* and *J. M. Stephenson*, for appellants.

*R. L. Parrish* and *L. H. Stephenson*, for appellees.

LEWIS, P., delivered the opinion of the court.

In 1867 a suit was instituted in the said court for an administration of the estate of William A. Bratton, deceased. In the progress of the cause, it appearing that a sale of a portion of the real estate devised by the deceased would be necessary to pay the debts of the estate, there was a decree accordingly, and under this decree a part of the farm known as the " home place " was sold on the 24th of February, 1876, at public auction, the purchaser being James McGuffin. The latter had intermarried with the appellee, formerly Nancy R. Bratton, a sister of the testator, and his sole residuary devisee. The terms of sale were complied with by McGuffin, the appellants here being his sureties on the bonds for the deferred payments.

Default, however, was made in the deferred payments, and there was a decree for a re-sale. Pursuant to this decree, the land was again exposed to sale, on the 27th of February, 1879, when it was knocked down to John F. Bratton, the highest bidder; but McGuffin put in an upset bid, and the court refused to confirm the sale. And, at McGuffin's instance, a commissioner was ordered to ascertain the amount he (McGuffin) would have to pay on account of his purchase after crediting him with what he was entitled to " in right of his wife," to whom the land had been devised by her brother, subject to the payment of debts.

In obedience to this order, the commissioner reported that the sum to which McGuffin would thus be entitled from the fund in the cause was $1,812.04, and that the debts of the estate remaining unpaid amounted in the aggregate to $3,038.63. This report, at the September term, 1879, was confirmed; and at the September term, 1880, a decree was entered, directing a re-sale of the land, unless within sixty days McGuffin, or some one for him, should pay the said sum of $3,038.63, with

interest, it being recited in the decree that that was the amount due the fund in the cause by McGuffin on his purchase, as shown by a statement, marked " F," returned by the commissioner with his report just mentioned.

The land was afterwards sold under the decree to John F. Bratton for $3,500, a sum sufficient to pay the debts· of the estate, and the sale was confirmed.

At the April term, 1883, an account was ordered to ascertain how much McGuffin and his sureties owed on his purchase, and who was entitled to the balance due by them. In obedience to this decree, the commissioner reported the balance to be $1,925.82, and that the same belonged to Mrs. McGuffin as residuary devisee. And judgments having been obtained on the bonds for the deferred payments, upon which the appellants were sureties, the court directed its receiver to collect the sum so ascertained to be due to Mrs. McGuffin, which he proceeded to do by execution.

Thereupon the appellants filed their bill for an injunction, which was the commencement of the present controversy. In the bill they set forth, as grounds for the relief prayed for, that McGuffin in reality purchased the land as agent for his. wife, and that she being really the purchaser and principal debtor, the plaintiffs, as sureties, could not be equitably required to pay the deficiency arising from her own default; and, secondly, that if McGuffin purchased for himself, his life estate as tenant by the curtesy in the fund, after the debts were paid, ought to be credited on the balance, for which an execution had been taken out against the plaintiffs, he being insolvent.

To this bill Mrs. McGuffin filed an answer, denying that her husband purchased the land as her agent, and insisting that she was entitled to the balance above mentioned.

The plaintiffs thereupon filed an amended and supplemental bill, setting up, as an additional ground for relief, that the

question of their liability had been finally adjudicated by the decree of September term, 1880, which declared, as they averred, that the amount due by McGuffin and his sureties was $3,038.63; that the effect of that decree was to destroy the lien for the indemnity of the sureties for any supposed liability in excess of that amount, and hence to correspondingly discharge them irrevocably; and that Mrs. McGuffin was bound by that decree.

The latter answered the amended bill, and depositions were taken, the suit being treated as ancillary to the pending suit in which the land had been sold. Afterwards Mrs. McGuffin obtained a divorce, *a vinculo matrimonii*, from her husband, the said James McGuffin, and when the cause came on to be heard the injunction previously awarded was dissolved, and the bills (original and amended) were dismissed. The plaintiffs then obtained an appeal.

The case lies within a narrow compass, and may be briefly disposed of.

We do not think the effect of the decree of September term, 1880, above mentioned, is as contended for by the appellants. Fairly construed, it was not an adjudication that the appellants were liable only for the sum of $3,038.63, and it would have been manifest error to have so decreed. The language of the decree is that the sum of $3,038.63 is "the amount due the fund in this cause by the said McGuffin upon his purchase, as will be seen by Statement 'F' of Report No. 4 of Commissioner McDannald." The decree thus refers in terms to that report, which had been confirmed, and to which we must look to see what the true indebtedness of McGuffin and his sureties was; and, looking to that report, we find that the commissioner reported in Statement "F," which accompanied his report, that the liabilities of the estate amounted to $3,038.63, and that he reported the sum to which McGuffin would be entitled *in right of his wife* to be $1,812.04—that

is to say, McGuffin and his sureties owed the aggregate of these two sums, but to the last-mentioned sum he was entitled, not absolutely, but in right of his wife. He himself never claimed to be entitled otherwise than " in right of his wife "; and what was that ?

At common law, if the wife be seised of an estate of inheritance in land, the husband, upon the marriage, becomes seised of the freehold *jure uxoris*, and he takes the rents and profits during their joint lives, or for his own life, as tenant by the curtesy, in case he survives the wife, having had a child born alive by her. 2 Kent. Comm. 130 ; *Ashby* v. *Smith*, 1 Rob Rep. 55.

Hence, in the present case, McGuffin was entitled to the profits only of the surplus after the debts were paid. He was not entitled to the surplus absolutely, because it continued impressed with the character of realty, in the absence of the wife's consent that it should be otherwise regarded. *Turner* v. *Dawson*, 80 Va. 841 ; *Ashby* v. *Smith, supra*.

It was, therefore, the duty of the court to preserve the fund for her benefit, and, as the husband was entitled to the interest on it, the court may have well considered it proper to require him, as purchaser, or his sureties, to pay only so much money as would be necessary to discharge the indebtedness of the estate, leaving the surplus secured by the lien on the land as the best means of preserving it.

The record shows that the appellants had notice of the proceedings subsequent to the decree of September term, 1880, and the amended bill itself states that they were present at the re-sale, when the land was sold to Bratton for $3,500.

The allegation of the original bill in the ancillary suit, that McGuffin purchased the land as agent for his wife, is denied by her in her answer, and clearly disproven by the record. His marital rights, moreover, in respect to the fund in question were terminated by the divorce decree, so that the·

appellee, Mrs. McGuffin, is now entitled to the fund absolutely, as the circuit court held. *Porter* v. *Porter*, 27 Gratt. 599 ; *Cralle* v. *Cralle*, 79 Va. 182.

In short, after a consideration of all the points made for the appellants, we are of opinion that the decree appealed from is right and must be affirmed.

DECREE AFFIRMED.