Charlotte CARSON

v.

Frances ELROD et al.

Civ. A. No. 75–0395–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 4, 1976.

Charlotte Carson, pro se.

Dandridge H. Yon, Asst. City Atty., Virginia Beach, Va., Karen C. Kincannon, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This is a civil rights action brought by the plaintiff, Charlotte Carson, against defendants Frances Elrod, Director of the Virginia Beach Department of Social Services, William Lukhard, Director of the Virginia State Department of Welfare, and the Honorable Phillip L. Russo, Judge of the Second Judicial Circuit of the Commonwealth of Virginia. The defendants are sued individually as well as in their present or former official capacities. The amended complaint alleges a cause of action under 42 U.S.C. § 1983, the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment, and seeks declaratory, injunctive and monetary relief. Plaintiff contends that the defendants, while acting in their official capacities, illegally deprived plaintiff of the custody of her infant daughter, Carol Carson. In particular, plaintiff avers that the charges

of child neglect preferred against her, the seizure of her child by the State, and the initial award of custody of her child to the Virginia Beach Department of Public Welfare all undertaken by the Commonwealth without prior notice and an opportunity to be heard, violated plaintiff's Due Process rights under the Fourteenth Amendment. Plaintiff further contends that the awarding of temporary custody of her child to the defendant Social Services Department, the eventual termination of her parental rights, and the permanent award of custody of the child to a public agency with the right to place her for adoption, all without plaintiff being afforded representation of counsel, violated plaintiff's Sixth Amendment right to counsel at the aforesaid proceeding. Finally, plaintiff avers that her Due Process rights were further violated by not being notified of, and not being given the opportunity to contest the subsequent adoption of her child. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1343 and 1331. The amount in controversy is alleged to be in excess of $10,000.

The matter is presently before the Court on motions of all the defendants to dismiss the amended complaint. Memoranda, affidavits and exhibits having been submitted, the matter is now ripe for disposition.

The basic issue in this case involves the legality of the procedure by which custody of plaintiff's child was denied to plaintiff and placed with defendant Elrod's agency in a judicial proceeding before the defendant Russo, at that time a Judge of the Juvenile and Domestic Relations Court of Virginia Beach. A second issue was raised for the first time in this Court in plaintiff's amended complaint. This issue involves the legality of a later order of adoption entered by a State Court allegedly without prior notice to plaintiff. The Court will consider the custody issue first.

 Since the very early dicta of *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), federal courts have adhered to the principal that child custody matters are purely a State concern. *Hernstadt v. Hernstadt*, 373 F.2d 316 (2nd Cir. 1967). There is no grant of jurisdiction to federal courts of child custody matters. Mrs. Carson's complaint is that the Commonwealth deprived her of custody of her minor daughter in a manner which violated her Due Process rights. A denial of Due Process is, of course, a matter of federal concern as it is of State concern. Courts of both governments have jurisdiction to hear and decide complaints involving the denial of a constitutional right. *Dowd Box Co. v. Courtney* 368 U.S. 502, 82 S.Ct. 519,7 L.Ed.2d 483 (1962); *U. S. v. Jones,* 109 U.S. 513, 520, 3 S.Ct. 346, 351, 27 L.Ed. 1015, 1016 (1883).

This controversy has endured a long and vexing history. From the pleadings, exhibits and affidavits, certain uncontroverted facts emerge. The early predicate for this chronology of events is perhaps best summarized in the findings of fact entered on 31 August 1967 by the Honorable Richard B. Kellam, at that time Judge of the Circuit Court of the City of Virginia Beach. In pertinent part, the findings read as follows:

The FBI record presented in evidence shows some 135 charges or convictions against Charlotte Carson. Many of the charges arose at one time, such as a charge of drunkenness, disorderly, resisting arrest, etc., but on more than eighty different occasions the charges involve not only drunkenness, disorder, resisting arrest, but use of profanity, petty theft, assault, assault on police officer, committing a lewd act, driving while intoxicated, indecent exposure, and so on. The record shows these offenses began about 1951, and continued through August 1967.

On November 6, 1966, at about one o'clock in the morning, the Police Department of Virginia Beach received a telephone call to go to the Viking Motel, that some lady had threatened to take her life and the life of her child. When the Officer arrived he found Miss Carson sprawled out on a sofa. Efforts were made for

quite some time to arouse her, without success. The child was located, and delivered to the Welfare for care. Thereafter petition was filed by the Welfare Department for custody of the child. After a hearing, the Juvenile Court granted complete custody of the child to the Welfare, and Miss Carson appealed.

Miss Carson now contends she has seen the errors of her ways and that the charge against her of child neglect which deprived her of custody was an awakening, and she has now changed. However, on August 28, 1967, she was again in difficulty for drinking, was disorderly and used obscene language, attempted to kick a police officer, did spit on the police officer, and kicked the jailor. On March 1st, 1967, she was charged in Charlotte, North Carolina, with operating an automobile while under the influence of intoxicants. Again on March 3rd, 1967, she was arrested for drunkenness and assault on a police officer. In March 1967, she was charged and later convicted of unlawfully using threatening language over the telephone. On August 13th, 1967, she was charged in DeLand, Florida, with public intoxication, disorderly conduct and open profanity. Sometime about May 13th, 1967, she was picked up on the streets in Norfolk after an attempted suicide by an overdose of pills. She admits attempts at suicide several previous times. The record of her stay in Norfolk General Hospital in May 1967, is "Commonwealth's Exhibit No. 3"

Three psychiatrists testified; two were presented by the Commonwealth and one by Miss Carson. Each said she lacked the ability to conform to standards of society; that she has a mental or behavior disorder; that she is rebellious toward authority; and that she has an alcoholic problem. She was described as unpredictable, unstable, and that when she was under the influence of alcohol she might be dangerous. One psychiatrist said such persons are not often able to be helped, and that with her history he was not very hopeful of helping her. All three of them agreed that the chances of her changing were limited, and all agreed she would have to want to help herself and discontinue the use of alcohol, that it would take a year to a year and a half of this conduct and treatment by a psychiatrist before they could even then say what her condition was. Her own doctor said it would be extremely hard for her to overcome the alcoholic problem.

The police who responded to the call in the early morning of 6 November 1966, notified the County Public Welfare Department (now Department of Social Services) of the baby's plight. Under defendant Elrod's direction, the baby was placed in a foster home to await court proceedings. Two days later, on 8 November 1966, the Juvenile and Domestic Relations Court convened, with defendant Russo as the presiding judge. At that time temporary custody of the child was awarded to the Department of Public Welfare. Plaintiff Carson, who was present in court, requested a continuance so that she could obtain a lawyer. A continuance of two weeks was granted.

On 22 November, the matter was called pursuant to the continuance. Plaintiff was present at that hearing and represented by counsel. At that time, the matter was again continued. Although the pleadings are unclear as to what date it was continued to, it was either until 13 December 1966, or 5 January 1967. In any event, at the next hearing to which the action was continued, the matter was continued generally. During the interim, on 7 December 1966, Mrs. Carson had been committed to Eastern State Hospital for observation. Mrs. Carson was subsequently discharged from the hospital on 27 January 1967, it having been determined that she was not mentally ill. On 14 March 1967, the Department of Public Welfare filed a petition for permanent custody of plaintiff's baby, with the right of adoption. On the same day the plaintiff was ar-

rested on a charge of child neglect and held without bond. Plaintiff was found guilty of child neglect by the Juvenile and Domestic Relations Court on 23 March 1967, and was sentenced to one year in jail and fined $500.00. Plaintiff appealed her conviction to the Circuit Court of the City of Virginia Beach on 9 May 1967. After a trial de novo, plaintiff was found guilty of the same charge by a jury, and sentenced to sixty days in jail.

In a hearing before the Juvenile and Domestic Relations Court on 25 May 1967, permanent custody of Mrs. Carson's child, with the right to place for adoption, was awarded to the Department of Public Welfare. Although there is a conflict in the affidavits as to whether Mrs. Carson was represented by counsel at this hearing, it appears that she was not so represented and the Court so finds. However, on appeal to the Circuit Court of the City of Virginia Beach, there was a trial de novo, at which time Mrs. Carson was undisputedly represented by counsel. At the conclusion of this hearing, the presiding Circuit Court judge awarded permanent custody of plaintiff's child with the right of adoption to the Department of Social Services. On 6 March 1968, the Supreme Court of Virginia refused to issue to Mrs. Carson a writ of habeas corpus for the release of her daughter. On the same day, the highest State Court also refused Mrs. Carson's appeal from the Circuit Court custody award. On 23 October 1969, Mrs. Carson's petition to the U.S. District Court, Norfolk Division, for the issuance of a writ of habeas corpus to obtain custody of her daughter was denied. Mrs. Carson's direct appellate remedies were finally exhausted on 1 June 1970 when the United States Supreme Court denied her petition for a writ of certiorari to the United States Court of Appeals for the Fourth Circuit.

Assuming, but not deciding that Mrs. Carson was entitled to an attorney at the final custody hearing before the Juvenile and Domestic Relations Court on 25 May 1967, and that plaintiff was denied same, then it may well be that plaintiff, at that time, had a valid complaint of denial of Due Process. *See, Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A final judgment or order by a juvenile court under the Virginia system is appealable by any party affected by the decree.[1] As related above, plaintiff perfected her appeal from the ruling of the Juvenile and Domestic Relations Court and was granted a trial de novo in the Circuit Court of the City of Virginia Beach before the Honorable Richard B. Kellam. In the Circuit Court, plaintiff was represented by Berry D. Willis, Jr., Esq., of Norfolk, Virginia. After a plenary hearing in the court of record, a written opinion of the trial judge, quoted in part above, recited the facts and circumstances under which the trial court deemed it necessary permanently to deprive plaintiff of the custody of her child. The Court awarded custody to the Department of Public Welfare with the right to consent to adoption. Neither in her complaint, briefs, nor affidavit does Mrs. Carson point to any Due Process infirmity in the de novo proceeding before the Circuit Court of the City of Virginia Beach. It being a de novo proceeding it in no way was dependent upon the decision or evidence below.

Throughout the history of this proceeding plaintiff has vigorously and understandably challenged the decision of the trial judge. However, this Court has no jurisdiction to sit in judgment over the wisdom of the Circuit Court, absent a demonstrated denial of Due Process. As stated, no such denial is alleged or otherwise appears by affidavit or argument in briefs.

Under these circumstances, this Court is powerless to grant Mrs. Carson the relief she so earnestly seeks.

1. Va.Code Ann. § 16.1–214 (Repl.1975).

■ Mrs. Carson points to the fact that she was deprived of the custody of her child before the Juvenile and Domestic Relations Court on 25 May 1967, and she urges that this deprivation is a continuing offense entitling her to relief under 42 U.S.C. § 1983 regardless of the fact that it took place almost nine years ago. As noted above, the deprivation of custody under which Mrs. Carson *presently* labors, was ordered in accordance with proceedings before the Circuit Court of the City of Virginia Beach, proceedings which are unblemished by any Due Process infirmities. The deprivation which Mrs. Carson allegedly suffered at the hands of the Juvenile and Domestic Relations Court must have ceased, at the latest, upon entry of the order of the Circuit Court. Even if she had been entitled to damages or other relief for alleged wrongful acts on the part of the Juvenile and Domestic Relations Court, recovery for those damages is time barred by the two-year statute of limitations applicable to § 1983 actions.[2] *Almond v. Kent,* 459 F.2d 200, 204 (4th Cir. 1972). Whether the limitation period be computed at one, two or five years, plaintiff's cause of action, having accrued almost nine years ago, is time barred.

■ Plaintiff's second allegation, that she was not given notice or an opportunity to be heard prior to the entry of the order of adoption by the State court, likewise fails to state a cause of action capable of surviving a motion to dismiss. Plaintiff was permanently divested of custody of her child by decision of the Circuit Court of the City of Virginia Beach on 31 August 1967. Thereafter, lawful custody of plaintiff's natural child rested with the Department of Social Services and all of plaintiff's rights with respect to the child were extinguished. This included the right of plaintiff to be notified when the child was placed for adoption. Thus, after 31 August 1967 plaintiff no longer possessed a legally cognizable interest the divesting of which required prior notice and an opportunity to be heard.

This Court cannot envision a more appealing case than that of a parent seeking to regain custody of his or her child. No bond is so precious and none should be more zealously protected by the law as the bond between parent and child. However, the issue here presented was raised, heard and determined by a court of competent jurisdiction, charged with the responsibility of making such decisions. No matter how appealing this case may be, this Court cannot substitute its judgment for that of the court which had the awesome burden of rendering the custody decision. Nor can this Court recreate the lives of the participants. The child, whose welfare is of paramount concern, is now almost ten years old. Since early infancy she has been and presumably still is in the care, custody, and love of her adoptive parents. Even if this Court possessed the power to delve into the relationships of this child with her natural mother and her adoptive parents it would do so at the risk of a grave disservice to the plaintiff, to the adoptive parents, and, most importantly, to the child herself. Indeed, if this Court had the power to set aside custody awards and subsequent adoptions, the harm which would ensue from the exercise of that authority would extend into the homes and lives of countless other persons who thought themselves secure in their capacities either as adoptive parent or as adopted child. If ever there was a need for a statute of repose, it lies in this field.

But the Court is not empowered to weigh these equities. The Court has no authority to render a decision on the merits. The Court, having no authority to grant the relief sought by Mrs. Carson, must dismiss the complaint for the reasons stated hereinabove. In view of the disposition here reached, the pending motion for change of venue need not be reached.

An appropriate order shall issue.

---

2. Va.Code Ann. § 8–24 (Supp.1975).