# Richmond

ALMA E. ROBERTSON v. W. M. STONE, ET AL., ETC., ET AL.

April 26, 1957.

Record No. 4678.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*J. Walter White* and *Lois H. Miller*, for the appellant.

*Armistead L. Boothe* (*Thomas G. Mays, Jr.; Boothe, Dudley, Koontz & Boothe; Adams, Porter & Radigan,* on brief) for the appellees.

Submitted on brief by *Harry L. Ryan, Jr.,* for appellees, Helen V. Horton and Lura L. Leonberger.

HUDGINS, C. J., delivered the opinion of the court.

On March 23, 1956, Alma E. Robertson, by leave of court, filed a petition in a partition suit instituted against her in the name of Alma E. Robinson by Helen V. Horton and Lura L. Leonberger. Petitioner alleged that: (1) she was the owner of a one third undivided interest in 8.04 acres of land lying partly in Arlington and partly in Fairfax counties; (2) she was a nonresident and was not served with process; (3) she was not properly named in the suit or in the order of publication; (4) under various decrees entered in the partition suit the land had been sold by special commissioners to Ashton C. Jones, Jr. and W. M. Stone, trustees, and the sale confirmed by decree entered May 7, 1954; (5) the land was susceptible of division in kind, and (6) the land had been sold for a grossly inadequate price. The prayer of the petition was that the deed from the special commissioners conveying the property to the purchasers at the judicial sale be declared null and void and for general relief.

W. M. Stone and Ashton C. Jones, Jr., individually and as trustees, and Walter R. Reynolds to whom Stone and Jones had sold and conveyed the property on December 20, 1955, became parties to the suit. A motion to dismiss the petition and a plea of the statute of

limitations were overruled and a rehearing was ordered. Thereupon, each of the above named parties and Helen V. Horton and Lura L. Leonberger, complainants in the bill for partition, filed various answers alleging, among other things, that: (a) petitioner had acquired her interest in the land under the will of her father wherein she was named as Alma E. Robinson and as such she had been properly so named in the partition suit and order of publication; (b) she had sufficient notice of the partition suit and sale; (c) it was established in the original suit that the property was not divisible in kind and the best interest of the parties would be promoted by a sale of the property and division of the proceeds; (d) the consideration paid for the property, $1,000 per acre, was fair and adequate; (e) Jones, Stone and Reynolds had expended large sums improving the property after they had acquired it.

On the rehearing all the parties were given full opportunity to present evidence on the issues raised by the petition and answers thereto. At the conclusion of an extended trial the court, in its opinion, held that under the provisions of Code, § 8-673, title to the property acquired at the judicial sale was good and could not be disturbed after one year from May 7, 1954, the date the sale was confirmed. In its decree, the court declared that the decree confirming the sale was not void but voidable only; that the fair value of the property on May 7, 1954 was $1,500 per acre; and that Helen V. Horton and Lura L. Leonberger pay petitioner her one third proportionate part of the difference between $1,000 and $1,500 per acre. To review that decree petitioner, hereinafter designated appellant, was granted this appeal.

 Appellant's first contention is that the special commissioners' deed conveying the property to the purchasers at the judicial sale is void as to her because she was a nonresident, not served with process or properly named in the partition suit and the order of publication.

An order of publication is a substitute for service of process. Its purpose is to apprise the defendant of the nature and object of the proceeding against him and to notify him that his rights may be affected in the litigation. *Peatross* v. *Gray*, 181 Va. 847, 27 S. E. 2d 203; *McFarland* v. *McFarland*, 179 Va. 418, 19 S. E. 2d 77.

The statutes (Code, §§ 8-71 and 8-72) authorizing an order of publication as a substitute service of process must be strictly construed and applied. *Staunton Perpetual Bldg., etc., Co.* v. *Haden*, 92 Va. 201, 23 S. E. 285; *Steinman* v. *Jessee*, 108 Va. 567, 62 S. E.

275. Although the person or persons to whom the notice is directed must be identified with reasonable certainty absolute accuracy is not required. "The name, if known, of a defendant to whom it is sought to serve process by publication should be correctly stated in the published notice, but it is sufficient to state the name by which the defendant is commonly known; and a slight error in spelling does not render the notice fatally defective where the notice otherwise so describes the defendant that the error is not misleading." 72 C. J. S., Process, § 69, p. 1100. 42 Am. Jur., Process, § 98, p. 85.

It is conceded that appellant's correct name is Alma E. Rob*ert*son and not Alma E. Rob*in*son, and that the land in question, as well as other real estate, was devised by Henry C. Stroman to his three daughters, whom he named in his will as Helen V. Horton, Lura L. Leonberger and Alma E. Rob*in*son.

The order of publication was issued in the partition suit on an affidavit of appellant's sister, Lura L. Leonberger, wherein it was stated that, "Defendant, Alma E. Robinson, is not a resident of the State of Virginia, and her last known post office address is Apartment 2, 3321 23rd Street, S. E. Washington, D. C." The order of publication was mailed by the clerk of the court to Alma E. Rob*in*son at the address stated in the affidavit, where she was then living, and returned marked "Unclaimed."

The order of publication published in the newspaper was full and complete on its face. It described the land in detail, stated that it was devised by the will of Henry C. Stroman to the three sisters, referred to the book and page where the will was recorded, gave the correct address of appellant in Washington, stated the nature and object of the proceeding and correctly stated the names of her two sisters who were the owners of the other two thirds undivided interest in the property.

Before the institution of the partition suit, appellant, on the advice of counsel, had signed papers both as Alma E. Rob*ert*son and Alma E. Rob*in*son in connection with the sale of her undivided interest in other real estate devised to her and her two sisters. In a condemnation action instituted by Virginia Electric and Power Company, she had been proceeded against as Alma E. Robinson, sometimes known as Alma E. Robertson, and had received and cashed checks made payable to her in the same way. It also appears that she had received and accepted letters addressed to Alma E. Robinson at her apartment in Washington.

On maturity of the partition suit the case was duly referred to E. Calvin Van Dyck, a commissioner in chancery, who was directed to make the usual inquiries and report to the court. In the commissioner's report filed on January 19, 1954, it is stated that the complainants, Helen V. Horton and Lura L. Leonberger, were present in person and by counsel and that the defendant, Alma E. Robinson, was not present or represented but had been "duly served by publication * * * and although not entitled to notice of the said hearing, was sent notice by registered mail and signed for the same."

In the light of the foregoing evidence we hold that the order of publication was a substantial and sufficient compliance with the pertinent statutes to make it a valid substitute for service of process, thereby giving the court jurisdiction to adjudicate the issues raised in the partition suit. It follows that there is no merit in appellant's first contention.

Appellant's second contention is that "even tho the decree of sale was not void" she was entitled "to have the sale set aside under Code, § 8-78," because on the rehearing she proved that the land was divisible in kind and that the price paid for it was grossly inadequate.

The pertinent provisions of Code, § 8-78[1] give a defendant, who was not served with process and did not appear in the case before the date of the judgment or decree, a right to have the case reheard on a petition filed within two years from the date of the judgment or decree confirming the sale. On such rehearing the petitioner may plead or answer and have any injustice in the proceedings corrected. A party who has been proceeded against by order of publication as required is a party "who was not served with process" within the meaning of the statute. *Cralle* v. *Cralle*, 79 Va. 182; *Sims* v. *Sims*, 140 Va. 435, 126 S. E. 486. If such a party files a petition for rehearing within the two year period, he is entitled to make defense "with the same effect as if made before the judgment or decree complained of was rendered." *Cralle* v. *Cralle, supra*, at page 185. On a rehearing it

---

[1] Code, § 8-78 provides:

"*Within what time case reheard, and any injustice corrected.*—Any unknown party, or other defendant, who was not served with process, and did not appear in the case before the date of such judgment, decree, or order, or the representative of any such, may, within two years from that date, if he be not served with a copy of such judgment, decree, or order, more than a year before the end of the two years, and if he be so served, then within one year from the time of such service, petition to have the case reheard, and may plead or answer, and have any injustice in the proceedings corrected."

becomes the duty of the court to determine whether any injustice has been done in the original proceeding and what relief, if any, should be afforded the petitioner.

This is a general statute applicable alike to suits in equity and actions at law. But it is limited by, and must be construed together with, Code, § 8-673, which provides that the title of purchasers at judicial sales shall not be disturbed after twelve months from the date of the decree or order confirming the sale, "but there may be restitution of the proceeds to those entitled."

As originally adopted this statute (Code, 1849, c. 178, § 8; Code, 1887, § 3425),[2] applied only to a judicial sale made more than six months after the date of the decree or order directing such sale. It was construed in *Brenham* v. *Smith*, 120 Va. 30, 37, 90 S. E. 657, wherein it was said: "It seems to us reasonably clear from the language used in the note of the revisors [1849], and from the wording of the statute itself, that as originally conceived and as finally phrased, it had in contemplation merely such decrees of sale as might be reversed or set aside for error on rehearing or review, and did not have in contemplation sales made under void decrees, which, whether the defendant was an infant or an adult, might be absolutely ignored and attacked collaterally without any direct proceeding on the part of the defendant to have them annulled or set aside otherwise." *Garland* v. *Pamplin*, 32 Gratt. (73 Va.) 305; *Quesenberry* v. *Barbour*, 31 Gratt. (72 Va.) 491; *Dixon* v. *McCue's Adm'x*, 21 Gratt. (62 Va.) 373.

The statute was rewritten and codified as § 6306 in the Code of 1919, and now appears in the 1950 Code as § 8-673, as follows:

"*When title of purchaser at judicial sale not to be affected.*—If a sale of property be made under a decree or order of a court, and such sale be confirmed, the title of the purchaser at such sale shall not be disturbed unless within twelve months from such confirmation the sale be set aside by the trial court or an appeal be allowed by the Supreme Court of Appeals, and an order or decree be therein afterwards entered requiring such sale to be set aside; but there may be restitution of the proceeds of sale to those entitled."

The limited scope of the original statute and its extended scope as

---

[2] Code, 1849, Ch. 178, § 8 reads as follows:

"If a sale of property be made under a decree or order of a court, after six months from the date thereof, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled."

rewritten in 1919 are clearly and concisely stated by the Revisors of the 1919 Code, as follows:

"Section 3425 of the Code of 1887 was taken without change from the Code of 1849 * * *. The section furnished protection to purchasers only in cases where the sales had been made under decrees or orders after six months from the date thereof, and as the vast majority of sales are made under decrees less than six months old, it followed that formerly a vast majority of the purchasers at judicial sales were not protected. The evil spoken of by the Revisors of 1849 (Report of Revisors, p. 878, note) applies as much to sales made before the expiration of six months as to those made after the expiration of that period or any other less or greater period. It being of great importance that the title of purchasers at judicial sales should be as stable as the circumstances will permit, and also of equal importance that no man shall be deprived of his lands without a sufficient opportunity to have the decree set aside or reversed if erroneous, the present revisors were of opinion that purchasers at judicial sales should be protected by providing that their titles should not be disturbed unless within some reasonable period (named in the above section as twelve months from the confirmation), the sale be set aside by the trial court, or an appeal be allowed by the Supreme Court of Appeals, on which appeal an order or decree is entered requiring the sale to be set aside. Of course, there may be restitution of the proceeds to those entitled, as formerly." Code, 1919, at page 2861.

It thus appears from the history and the language of the statute itself that the title of a purchaser at a judicial sale shall not be disturbed after twelve months from the date of the decree of confirmation, even though the decree is erroneous or voidable. It follows that inasmuch as appellant did not file her petition for a rehearing within twelve months from May 7, 1954, date of the decree confirming the sale, the trial court did not err in its refusal to disturb the title acquired by the purchasers at the judicial sale.

█ In the original proceedings in the partition suit the court confirmed the report of the commissioner in chancery, wherein it was stated that the land was not divisible in kind and was worth approximately $1,500 per acre. On the rehearing there was a conflict in the testimony as to whether the land was divisible in kind. However, the testimony was taken *ore tenus* and fully supports the conclusion of the trial court that the land was not divisible in kind.

The substance of appellant's contention concerning the value of

the land is that the court should have determined its value as of the date of the rehearing, which value she claims was $4,000 per acre. Appellees' contention is that its value should be determined as of the date of sale, which both sides concede to have been $1,500 per acre.

There is some testimony tending to show that the value of the land on the date of the rehearing was $4,000 per acre. However, other evidence tends to show that after the purchasers at the judicial sale and their successor in title acquired the property, they spent large sums of money in its development. It appears from this evidence that "there has been quite a bit of clearing," a street opened, 80,000 cubic yards of dirt has been used to fill in a ravine, curbing, gutters, storm sewers and water have been installed at a cost of approximately $14,000. Plans have been made and liability assumed to make sanitary sewers available to the land at an estimated cost of $100,000. Obviously, appellant is not entitled to profit from the enhanced value of the property caused by the efforts and expenditures of others after they had acquired title thereto. The statute itself provides that on a rehearing a petitioner may have any injustice done him in the proceedings corrected. This necessarily means that in this case the value of the property should be determined as of the date of the decree confirming the sale and not as of the date of the rehearing.

Appellant concedes that the trial court's finding that the land was worth $1,500 per acre at the time of the sale was confirmed is supported by the overwhelming weight of the evidence. It follows from this finding of fact that appellant had sustained a loss of her proportionate part of the difference between the land valued at $1,000 and $1,500 per acre. The court corrected this injustice by directing that Helen V. Horton and Lura L. Leonberger pay appellant her proportionate part of the difference in the two valuations. Further discussion of this phase of the case is unnecessary as the two sisters, Helen V. Horton and Lura L. Leonberger, filed a separate brief from the other appellees in which they pray that "the decree and judgment entered by the Circuit Court for Fairfax County should be affirmed as to them." The other appellees state in their brief that they are not involved in or concerned with the money judgment in favor of appellant against her two sisters.

For the reasons stated the decree of the trial court is affirmed.

*Affirmed.*