# Richmond

## Anna Frances Jones Lowe v. Taylor P. Grasty, Et Al.

November 27, 1961.

Record No. 5338.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, l'Anson and Carrico, JJ.

*Vance M. Fry (Higginbotham & Fry*, on brief), for the appellant.

*R. D. McIlwaine, III, Assistant Attorney General (Frederick T. Gray, Attorney General*, on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

On August 15, 1960, the appellant, Anna Frances Jones Lowe, mother of Michael Daniel Jones, born July 28, 1955, filed in the Circuit Court of Orange county a petition for a writ of *habeas corpus* to obtain the custody of her son, naming as respondents Taylor P. Grasty and the other two members of the Orange County Department of Public Welfare, together with Ruth C. Potts, Superintendent of said department.

The petitioner alleged that respondents had custody of her son under an order of said court entered on April 5, 1960, which was invalid and void in that it was entered on an appeal from an order of the Juvenile and Domestic Relations Court of Orange county entered on February 18, 1960, which was also void. The petitioner further alleged that the continued custody of the child by respondents was contrary to its best interests, and that its custody should now be restored to her as its mother and surviving parent.

The respondents filed their answer in which they denied the allegations of the petition and alleged that on October 8, 1959, Ruth C. Potts, Superintendent as aforesaid, had petitioned the Juvenile and Domestic Relations Court for custody of the child, who was dependent, neglected and without parental care, his mother and sole surviving parent being then in jail for drunkenness, and that after a hearing the court had entered an order on October 8, 1959, committing the child to the County Department of Public Welfare. A certified copy of the order was filed with the answer.

The answer further alleged that on January 28, 1960, the said Ruth C. Potts, Superintendent, again petitioned the Juvenile and Domestic Relations Court that the County Board of Public Welfare be given the privilege of placing the child in a suitable home for adoption, and that on February 18, 1960, after hearing evidence, the Juvenile and Domestic Relations Court entered an order giving to the County Board of Public Welfare, in addition to the custody which it already had, the right to place the child for adoption; that

the mother appealed from that order to the Circuit Court, which heard evidence and then entered the order of April 5, 1960, confirming the custody of the infant in the Orange County Board of Public Welfare and granting to the Board the right to place said child for adoption and terminating the parental rights of the mother; and that subsequently thereto the child was placed in a very fine home in Virginia where he is happy and improved and should further improve and develop. Respondents prayed that the writ of *habeas corpus* be not issued.

On her petition for the writ the petitioner introduced in the Circuit Court on September 2, 1960, a number of witnesses in an effort to prove that she had reformed her habits, stopped drinking, rehabilitated herself, had married again and had a suitable home for her son where he would have a proper environment and comfortable surroundings, and that she is a suitable person now to have his custody and control.

From this testimony, along with other evidence in the record, it appears that at the time of the order of October 8, 1959, the mother was an inebriate and her counsel concedes that at that time and to the time of the order of April 5, 1960, it was not proper for her to have custody and control of the child.

The petitioner had been married three times. Her first husband was killed and her second, Reginald Jones, was the father of this child. While she and Jones lived together from 1952 until his death in 1959, they did not marry until January, 1959, more than three years after this boy was born. At the time of the order of October 8, 1959, she was drinking heavily and apparently she continued in that habit until April 6, the day after the April 5 order of the Circuit Court, but she testified that since that date she had never taken another drink. Sometime prior to April 5, Jones was burned to death in a fire and on July 5, 1960, the petitioner married one Gurney Lowe, who owned and lived in his home in the city of Washington. Lowe was then sixty-six years of age and the petitioner was thirty-five. Lowe testified that he was a contractor with a net income of about $6,000 a year. This was also his third marriage. He also had had a drinking problem but had stopped some months before he and petitioner were married, and since their marriage both of them were attending church and their home was well kept and according to the evidence a suitable home and environment for the child. A married sister of the petitioner, employed as a secretary in Washington, testified that she felt it was proper for the child to be taken away from the petitioner at the time that was done, but she be-

lieved now that her change was permanent and that she was a fit person to have custody of the child. She conceded that if her sister should return to her former behavior it would be a bad thing for the child but she felt that she ought to be given a chance.

At the conclusion of the testimony offered by the petitioner the trial judge stated that he had made up his mind and saw no need to proceed with further evidence. He expressed the hope that the mother's reformation was genuine but said "it is too short a time for the Court in considering the best welfare of this child to adopt that as a permanent reformation, and the Court would certainly have to have a longer period of time for the mother to show and to demonstrate her suitability to have the custody of this son." The court accordingly found that the petitioner was not entitled "at this time" to the custody of the child and that the writ should be denied. Later the same day the petitioner filed a written motion that the case be continued to the November term so she might introduce additional evidence as to the permanency of her rehabilitation. It was urged in support of the motion that adoption proceedings might become final and petitioner's custody of the child forever lost. The motion was refused and the order appealed from was entered on September 28, 1960, denying the writ and dismissing the petition.

The order of October 8, 1959, entered by the Juvenile and Domestic Relations Court committed the child to the Orange County Department of Public Welfare "to be received, detained, managed and controlled in the manner prescribed by law."

The petitioner does not attack that order. She concedes its validity and its propriety. Under that order the custody of this child was duly lodged in the local Department of Welfare, has not been changed and still remains there. In that situation it was possible for the mother to regain the custody of her child if and when she established her fitness for that responsibility.

Some three months later, however, the County Superintendent of Public Welfare petitioned the same court for the privilege of placing the child in a suitable home for adoption, and that was granted by the order of February 18, 1960, which recited that the mother was not present at the hearing "after receiving official notice" of the time, and which adjudicated that the child be "permanently committed" to the County Department of Public Welfare, which was also granted "full adoption privileges".

While the main contentions of the appellant under her assignments of error are that the order of the Juvenile Court of February

18, 1960, is void because of the failure to give the notice required by § 16.1-166 of the Code, and the failure to appoint a guardian *ad litem* for the infant as required by § 16.1-173, there is a defect in the proceedings that requires prior consideration. *Cf. Humphreys* v. *Commonwealth,* 186 Va. 765, 771, 43 S. E. 2d 890, 893.

We have not been referred to, nor have we found, any statute in effect at February 18, 1960, conferring on the Juvenile and Domestic Relations Court the power to commit a child permanently to the local Department of Public Welfare with full adoption privileges, and thus put it beyond the power of natural parents to regain their own. Before such power is exercised it should be plainly conferred. Not only is such power not plainly conferred but § 16.1-180 of the Code commands that "[a]ll commitments under this law shall be for an indeterminate period having regard to the welfare of the child and interests of the public, * *."

By Acts, 1960, ch. 331, p. 392, which did not become effective for more than four months after the Juvenile Court order of February 18, 1960, the General Assembly amended Code § 16.1-178 by adding the two paragraphs shown in the margin.[1]

By the same Act § 63-351 of the Code was amended to provide for the first time that the written consent to adoption required by that section could be executed by the local board of public welfare having custody of the child, with the right to place him for adoption, through court commitment.

Not until these amendments became effective did the Juvenile and Domestic Relations Court have the power exercised by its order of February 18, 1960, and that order permanently committing the custody of the child to the County Department of Public Welfare and giving that body full adoption privileges was without authority and void.

By § 16.1-158 the Juvenile and Domestic Relations Court is given

---

[1] "Commitment of a child by any court under any of the provisions of this section shall not per se confer the right upon the receiving agency to place such child for adoption. If proper studies indicate that it is for the child's best interest and that of the State that such child be separated permanently from its parent, parents or guardian, the order of commitment shall so state either in its original form or by subsequent proper revision thereof by the court, in which event the agency having custody of the child shall be free to make such permanent plans for the child as may otherwise be within the scope of the agency's authority.

"The provisions of this section, insofar as they may affect a local board of public welfare or other agency in giving consent for the adoption of any child placed in its custody by order of a court, shall not operate to change or invalidate such consent in any adoption suit pending on July 1, 1960."

exclusive original jurisdiction over all cases involving the custody or disposition of a child who is without proper parental care and in other situations there listed.

The February 18, 1960, order of that court being void, the order of the Circuit Court on appeal therefrom, entered April 5, 1960, was likewise void and was ineffective to terminate the parental rights of the child's mother and to give the local Board of Public Welfare its custody and control, with power and authority to place the child for adoption, as was attempted to be done by said order. *Humphreys* v. *Commonwealth*, *supra*, 186 Va. at 772, 43 S. E. 2d at 893.

■ While this conclusion controls the disposition of this case, in view of the nature of the proceedings it is proper to add that the February 18, 1960, order of the Juvenile Court is also fatally defective because no guardian *ad litem* for the infant was appointed or present. The governing statutes are copied in the margin.[2] The order itself states that the mother was not present at the hearing and it is conceded that no guardian *ad litem* for the infant was present and that none was appointed.

The appellees contend that since the mother had previously been deprived of the custody of the child, and the Superintendent of the local Welfare Department was present, it was not necessary to appoint a guardian *ad litem* under these statutes. We do not agree. The local Superintendent of Public Welfare was the petitioner in the case, asking that the child be permanently committed to the local Board and that the local Board be granted full adoption privileges. These questions merited careful investigation and the statutes do not contemplate that in such case the local Superintendent of Public Welfare may represent both sides and be both plaintiff and defendant. We have held that a personal judgment against an infant for whom no guardian *ad litem* has been appointed is void. *Kanter* v. *Holland*, 154 Va.

---

[2] "§ 16.1-172. Notice to parents or person or agency acting in place of parents.— In no case shall the hearing proceed until the parent or parents of the child, if residing within the State, or person or agency acting in place of parents in case the parents have theretofore been legally deprived of custody of the child, have been notified, unless the judge shall certify on his record that diligent efforts have been made to locate and notify the parent or parents without avail, or unless the court shall certify that no useful purpose would be served thereby because of the conditions set out in § 16.1-166.

"§ 16.1-173. When guardian ad litem appointed.—When no person required to be notified under § 16.1-172 is present in court at the time of the hearing, the court shall, before proceeding with the hearing, appoint a probation officer or a discreet and competent attorney at law as guardian ad litem to represent the interests of the child or minor, and such guardian ad litem shall be present at the hearing."

120, 152 S. E. 328; *Broyhill* v. *Dawson*, 168 Va. 321, 191 S. E. 779; *Moses* v. *Akers*, p. 130, decided today. There are compelling reasons against relaxing that rule in cases such as this.

In *Buchanan* v. *Buchanan*, 170 Va. 458, 464, 197 S. E. 426, 429, we said that "[a]s applied to infants, the primary object [of *habeas corpus*] is to determine in whose custody the best interests of the infants will probably be advanced. In determining such custody, the natural rights of the parents are entitled to due consideration. * *."

■ However, because the order of October 8, 1959, entered by the Juvenile and Domestic Relations Court giving custody of the infant to the Orange County Board of Public Welfare was a valid order, the petition of the appellant for a writ of *habeas corpus* to end that custody and deliver the child to her cannot, under the circumstances of this case and the evidence produced by the appellant, now be properly granted.

Section 16.1-183 of the Code provides that the juvenile and domestic relations court of its own motion and after giving notice "may reopen any case and may modify or revoke its order." *Cf. Turner* v. *Children's Home Society*, 158 Va. 406, 412-3, 163 S. E. 399, 401.

Section 16.1-161 of the Code provides that the juvenile court statutes shall not deprive any other court of concurrent jurisdiction to determine the custody of children upon a writ of *habeas corpus*, but "[s]uch court may certify such matters to the juvenile and domestic relations court for hearing and determination or for recommendation."

We are of opinion that under the circumstances of this case the Circuit Court should have sent the case back to the Juvenile and Domestic Relations Court to make further investigation and hear further testimony on the questions of custody and the proper exercise of the power given that court by the 1960 amendments of the statutes.

We therefore affirm the order of the Circuit Court so far as it dismisses the petition for writ of *habeas corpus*, but remand the case to that court with direction to enter an order requiring the Juvenile and Domestic Relations Court to give proper notice to the appellant and the appellees, appoint a guardian *ad litem* for the infant, and hear evidence as to who should have custody of this child, and to take such other proceedings as are authorized by law.

*Affirmed and remanded.*