## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Adoption of A. R. M.

July 13, 1990

Case No. N 8162-2

By JUDGE ROBERT L. HARRIS, SR.

In this case the birth mother of a child who was adopted by respondents by final order of this court on May 26, 1988, filed a petition for *habeas corpus* seeking to set aside that final order of adoption and return to her custody of her daughter. The birth mother and the adoptive parents, in person and represented by counsel, appeared at an evidentiary hearing on April 11, 1990. The court took the case under advisement.

The facts are generally undisputed. The birth mother had physical custody of the child from the date of the child's birth on November 8, 1984, until May 1, 1985, when she left the child with her cousin. The birth mother, who had a drug problem, intended to attend a rehabilitation program. She did not attend such a program at that time. The child lived with the cousin from May 1, 1985, until August 9, 1985, when she was returned to the birth mother. The birth mother kept the child until September 15, 1985, at which time she returned the child to her cousin because she realized that her drug problem rendered her incapable

of caring for her daughter. The cousin cared for the child for six months, during which time she repeatedly attempted to contact the birth mother. The cousin testified at trial that she stopped at the birth mother's apartment ten to twelve times during the six months from September, 1985, until March, 1986. Although the cousin called ahead to tell the birth mother when she would arrive, the birth mother was never at home. The cousin sent several letters to the birth mother, urging her to make arrangements for the care and custody of the child, to no avail. During the period when the cousin was caring for the child, the birth mother made no attempt to inquire about, contact, or visit her child. The birth mother testified that during this period, she "moved around a good bit from 16 Snyder Terrace, to one jail, to another . . . ."

After caring for the child during the child's infancy, the cousin, a middle-aged woman with six children of her own, learned of a couple who wanted to adopt a child. The mother of the prospective adoptive mother was a friend of the birth mother's family. The cousin arranged for the couple, who were originally from Pennsylvania but had moved to Richmond, Virginia, to come to Pennsylvania to visit the child. During the period from March 20, 1986, until May 10, 1986, the child stayed with the mother of the prospective adoptive parents, and the couple visited the child frequently. The cousin attempted to contact the birth mother to request her consent to an adoption because the birth mother had shown no signs of being capable of or interested in resuming care of the infant.

As the court has previously noted, all of the cousin's attempts to contact the birth mother after September 15, 1985, were fruitless. A letter sent by the cousin to the birth mother at Chester County Prison on March 23, 1986, was returned. On May 10, 1986, the cousin consented to the prospective adoptive parents taking physical custody of the child, admonishing them to follow all the legal procedures. The couple consulted a Pennsylvania attorney. On May 30, 1986, he filed a Petition for Involuntary Termination of Parental Rights and a Report of Intention to Adopt on their behalf in the Court of Common Pleas of Fayette County, Pennsylvania. The birth mother testified that she was served with the "papers" for the Fayette

County adoption proceeding.[1] A hearing on the petition was scheduled for June 20, 1986. That hearing was cancelled by the adoptive parents' attorney, to be rescheduled only upon request.

On May 10, 1986, upon the advice of their Pennsylvania attorney, the adoptive parents brought the child to their home in Richmond. The adoptive parents testified that they became dissatisfied with their Pennsylvania attorney because he was not familiar with adoption procedures. They consulted another Pennsylvania attorney who had handled the birth mother's grandmother's estate. That attorney advised the adoptive parents that because the child resided in Virginia, they could file the adoption proceeding here. They then contacted Mr. Johnson, who has represented them since that time.

The adoptive parents filed a petition for custody in the Richmond Juvenile and Domestic Relations District Court on October 8, 1986. The birth mother was served with notice of the petition by certified mail, return receipt requested as provided in § 16.1-264(A). She did not object in writing or appear at any hearing. By order entered January 6, 1987, the court granted custody to the adoptive parents without adjudicating the rights of the birth mother or resolving the circumstances of the child's placement with the adoptive parents.

During the week of March 1, 1987, the sister of the adoptive mother read a news article stating that the birth mother had been arrested and was being held in the Fayette County jail. The sister told the prospective adoptive mother, who sent her an adoption consent form. The sister took the consent form to the jail on March 1, 1987, and spoke to the birth mother. The sister told the birth mother that there was an adoption pending in Virginia. She asked the birth mother to sign the consent form so that the prospective adoptive parents could adopt the child. The sister testified that the birth mother read the consent form; the birth mother testified that she never saw it. However, both agree that the birth mother was asked to sign a consent form and she declined.

---

[1] The birth mother's testimony is unclear as to whether she was in jail at the time she received notice of that proceeding.

In May, 1987, the adoptive parents submitted a petition and an affidavit to the Richmond Circuit Court. The affidavit, dated May 9, 1987, was filed for the purpose of obtaining an order of publication. The affidavit named the birth mother, stated that the identity of the birth father was unknown, that the whereabouts of the birth mother were unknown and not reasonably ascertainable, that due diligence had been used to locate the birth mother, and that her last known address was 16 Snyder Terrace, Uniontown, Pennsylvania 15401.

The court entered an order of publication on May 19, 1987, ordering the birth mother to appear before the court on or before July 15, 1987, and indicate her attitude towards the proposed adoption. The Order of Publication appeared in the Richmond *Times-Dispatch* for four consecutive weeks as required by statute. The birth mother testified that she never saw the order of publication and thus made no objection. The court then entered an order of reference on July 21, 1987. Pursuant to that order, the Richmond Department of Social Services investigated and reported to the court on September 30, 1987, as required by Section 63.1-223. The report recommended the adoption be allowed if the court was satisfied with the matter of consent. On October 30, 1987, the court entered an Interlocutory Order of Adoption. On May 26, 1988, the court entered a Final Order of Adoption.

In August, 1988, the birth mother was released from incarceration. On November 19, 1988, the cousin who had taken care of the child during her first year sent a letter to her aunt, who was caring for the birth mother's son. The aunt, also the aunt of the birth mother, was in contact with the birth mother. In the letter, the cousin mentioned that the adoption of the child had been finalized. The aunt immediately called the birth mother and informed her. On August 7, 1989, one year after being released from incarceration, the birth mother filed her petition for *habeas corpus* in this court.

The birth mother has not seen the child since September 15, 1985. The birth mother has never attempted to make contact by telephone, letter, or in person, with either the child or the adoptive parents. The birth mother had three children born out of wedlock. The birth mother gave physical custody of one of her other children to her aunt

in May, 1985. The third child went to live with his birth father at the same time. The birth mother visits with the other children but has never taken them back to live with her. She has given them little or no financial support. The birth mother testified that she has been drug-free since March, 1987.

The birth mother testified that the birth father is Gregory Allen Gray. Mr. Gray was not listed on the birth certificate. He appeared in court on April 11, 1990, as a witness for the birth mother. According to Mr. Johnson, Mr. Anderson had assured him that only the birth mother and the aunt would testify. Relying on such assurance, Mr. Johnson did not go to the expense of traveling to Pennsylvania to depose Mr. Gray. The court did not allow Mr. Gray to testify until such time that Mr. Johnson could depose him. Mr. Gray's testimony, that he is the birth father and he did not consent to the adoption, was proffered to the court. However, in view of the court's ruling that Mr. Gray could testify only after Mr. Johnson had an opportunity to depose him, Mr. Anderson stated that he would withdraw Mr. Gray as a witness in the interest of resolving the matter at one hearing.

This court must decide: (I) whether the final order of adoption entered on May 26, 1988, must be set aside; (II) if the order is invalidated, whether the child should be returned to the birth mother.

I. *The Final Order of Adoption Entered on May 26, 1988, Must Be Set Aside*

Virginia Code § 63.1-237 provides that "after the expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken to the Court of Appeals, *the validity thereof shall not be subject to attack in any proceedings, collateral or direct, and such order shall be final for all purposes.*" Va. Code Ann. (1987) (emphasis added). Such a specific, strongly-worded finality statute evidences the General Assembly's concern for the stability of the familial relationships brought about through adoption. Further, the Virginia Supreme Court has stated that:

306

> The most drastic and far-reaching action that
> can be taken by a court of equity is to enter
> a final order of adoption . . . . Custody of
> children and child support are matters that
> remain within the breast of the court and are
> subject to change and modification so long as
> a child is a minor. This is not true of adoptions.
> Once an order of adoption is final, the natural
> parent is divested of all legal rights and ob-
> ligations . . . .

*Doe v. Doe*, 222 Va. 736, 746, 284 S.E.2d 799, 805 (1981).

The above-quoted passage underscores the tension between two competing policy considerations that must be weighed in this case. Because adoption is so final, the tie between the birth parents and the child should not be severed without compelling reasons. *Id.* at 747, 284 S.E.2d at 805. However, once entered, and once the time to appeal has passed, such an order should not be lightly overturned. This court has discovered no reported Virginia case wherein a birth parent has sought, by collateral attack, to overturn a final order of adoption. In one Virginia federal court case, a birth mother whose rights had previously been terminated in a separate proceeding before entry of the adoption order sued the Department of Social Services and various officials, claiming she had been denied due process of law because she was not given notice of the adoption proceeding. *Carson v. Elrod*, 411 F. Supp. 645 (E.D. Va. 1976). The court held that the birth mother was not entitled to notice of the adoption proceeding because her parental rights had already been judicially terminated. *Id.* at 649. The court's holding concerning notice, based on a prior judicial termination of parental rights, is inapposite to the facts of this case. However, the late Judge Warriner emphasized the grave consequences of entertaining collateral attacks on adoptions:

> Indeed, if this court had the power to set aside
> custody awards and subsequent adoptions, the
> harm which would ensue from the exercise of
> that authority would extend into the homes
> and lives of countless other persons who thought

> themselves secure in their capacities either as adoptive parents or as adopted child. *If ever there was a need for a statute of repose, it lies in this field.*

*Id.* (emphasis added). This court agrees that the need for finality of judgments is greatest when the welfare of a child and the stability of family life are concerned.

The Virginia Supreme Court has held that a more specific statute of finality limits the general statute on rehearing. *Robertson v. Stone*, 199 Va. 41, 97 S.E.2d 739 (1957). In *Robertson*, the court determined that a specific statute on the finality of sales made under court decrees -- now § 8.01-113, providing that after twelve months, the title of the purchaser was not to be disturbed -- controlled over the statute allowing rehearing where the defendant was served by order of publication (now Section 8.01-322). Thus, where a specific finality statute is enacted, as in the case of adoptions, a motion for rehearing under § 8.01-322 is not available.

This court, however, holds that § 63.1-237 does not preclude an attack on a void judgment. A judgment is void if the court entering the judgment lacked jurisdiction or if the judgment was procured by extrinsic fraud. *See Slaughter v. Commonwealth*, 222 Va. 787, 284 S.E.2d 824 (1981) (failure to validly serve process on the defendant renders the judgment void as to him) and *Jones v. Willard*, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983) (the judgment of a court, procured by extrinsic fraud, is void). As stated by the Virginia Supreme Court in both *Slaughter* and *Jones*, a void judgment is subject to attack, direct or collateral, at any time. *Id. See also* Va. Code § 8.01-428 (providing that default judgments may be set aside if void or obtained by fraud on the court.)

The rule allowing collateral attacks on void judgments protects the due process rights of the affected parties. The United States Supreme Court has stated that "an elementary and fundamental requirement of due process in any proceeding *which is to be accorded finality* is notice . . ." *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306 (1950). A void judgment, rendered without notice, is not to be accorded finality and is subject to collateral attack because due process has not been afforded. In the

*Mullane* case, the proceeding concerned property rights only. The Supreme Court has recognized in several cases that parental rights are of a higher importance. "The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and 'rights far more precious than property rights'." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (quoting from several earlier cases; citations omitted). In *Stanley* the Court held that an Illinois law violated both the due process and equal protection clauses of the fourteenth amendment because it denied an unwed father a hearing on his parental fitness prior to removal of his children upon the death of the mother. *Id*. The court has also held that states must apply at least a "clear and convincing evidence" standard to parental rights termination proceedings. *Santosky v. Kramer*, 455 U.S. 745 (1982). Considering the magnitude of the parental rights affected by a final order of adoption, a court's reading of § 63.1-237 that does not allow for attacks on void judgments is an unconstitutional deprivation of due process.

The petitioner in this case makes two separate arguments for lack of jurisdiction. First, she contends that, because the adoptive parents failed to comply with the Uniform Child Custody Jurisdiction Act (UCCJA), Virginia Code § 20-125 *et seq.*, the Richmond Juvenile and Domestic Relations District Court lacked jurisdiction to grant them custody, and this court lacked jurisdiction to grant the adoption. The UCCJA in § 20-129 provides that: "a court of this state shall not exercise its jurisdiction *under this chapter* if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction *substantially in conformity with this chapter* . . . ." Va. Code Ann. (1990) (emphasis added). This court is of the opinion that the UCCJA, by its terms, only applies to *custody* proceedings. I reject the petitioner's contention that the adoptive parents were statutorily required in either the custody proceeding or the adoption proceeding to inform the courts here of an *adoption* proceeding they had earlier instituted in Pennsylvania.

Petitioner's second contention is that this court lacked jurisdiction over her person because she was not

given notice and an opportunity to be heard before the court ordered the adoption without her consent. Code Section 63.1-225 provides that no adoption petition shall be granted unless a valid written consent is filed with the petition, "except as hereinafter provided." The exception is contained in § 63.1-225(D)[2] which provides that:

> *If after hearing evidence, the court finds* that the valid consent of any person or agency whose consent is hereinabove required is withheld contrary to the best interests of the child or is unobtainable, the court may grant the petition without such consent:
>
> (1) Twenty-one days after personal service of notice of petition on the party or parties whose consent is required by this section; or
>
> (2) If personal service is unobtainable, ten days after the completion of the execution of an order of publication against the party or parties whose consent is required by this section concerning the petition . . .

Va. Code Ann. (Supp. 1989) (emphasis added).

The adoption at issue here was granted without the consent of the birth parents pursuant to the above-quoted section after an order of publication. Petitioner argues that such a procedure was insufficient to confer jurisdiction on this court to adjudicate the parental rights of the petitioner for several reasons. First, petitioner contends that even if the statutory requirements for an order of publication under § 8.01-316 were met, due process demands better notice in this situation.

Petitioner's first argument is based on *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306 (1950). In *Mullane* the United States Supreme Court considered a New York statute allowing for notice by publication to interested beneficiaries of pooled trusts concerning a judicial settlement of accounts by the trustee. The

---

[2] In 1989 the section was amended so that former subsection (C) in force at the time of the adoption is now subsection (D); hereinafter the subsection will be referred to as Section 63.1-225(D).

court discussed the shortcomings of constructive notice by publication: "In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint." *Id.* at 315. Recognizing the near impossibility of providing actual notice to beneficiaries whose interests or whereabouts are unknown, the court held that constructive notice by publication as to them was sufficient. *Id.* at 317. However, as to beneficiaries whose names and addresses are known, notice by mail must be sent. *Id.* at 318. Such notice effectuates the rule that "within the limits of practicability, notice must be such as is reasonably calculated to reach interested parties." *Id.*

The rule in *Mullane* is certainly applicable here. However, the rule is complied with if the terms of the publication statute are followed. Code § 8.01-317 requires the clerk of the court to mail a copy of the order of publication to each defendant at the last known address given in the required affidavit. In fact, the clerk did send the order to the last known address supplied in the affidavit in this case. The envelope was returned, marked by the postal service: "Return to Sender/Moved Left No Address." In addition, a letter was sent to the birth mother at the same address by the Richmond Department of Social Services. That letter was also returned. It is the opinion of this court, as well as that of a leading commentator on Virginia civil procedure, that the mailing under § 8.01-317 satisfies the *Mullane* requirement. W. H. Bryson, *Handbook on Virginia Civil Procedure* 119, n. 101 (2d ed. 1989).

However, the court is concerned with the petitioner's second contention that the necessary prerequisites for obtaining an order of publication were not fulfilled in the original adoption proceeding. The use of an order of publication to give notice to the birth mother that her child will be adopted without her consent is questionable, considering the grave nature of the proceeding. The procedure is, however, allowed by statute in § 63.1-225(D), as set out in full above. The paragraph begins with the phrase "*If after hearing evidence,* the court finds . . ." (emphasis added) and goes on to state that an order of publication may be used to notify the nonconsenting parties of the pending adoption. In this case, no hearing was

held. No finding was made that the birth parents withheld consent contrary to the best interests of the child or that consent was unobtainable. No allegation was made in the adoption petition regarding the withholding of consent, nor was any *ore tenus* hearing requested by the adoptive parents. This court is of the opinion that Section 63.1-225(D) requires that an *ore tenus* hearing must be held before a final order of adoption may be entered without the consent of anyone whose consent is required under Section 63.1-225(C).

From the wording of the statute, it is not clear whether the evidentiary hearing or the publication comes first in time. However, the appropriate findings are the logical predicate to proceeding by order of publication. Where the statute provides that publication is available "if the court finds" something, then publication is only available where such findings have been made. If service by publication was unavailable, no valid process was served on the birth mother. The order granting the adoption and terminating her parental rights is void.

Alternatively, in the absence of the required findings, the court is without authority to enter a final order of adoption without consent. Code § 63.1-225 prohibits courts from granting adoptions without consent, except where the required finding has been made under the exception in paragraph (D). Where the court enters an order without authority, such an order is void. *See Lowe v. Grasty*, 203 Va. 168, 122 S.E.2d 867 (1961).

In addition, the court is concerned what the last known address furnished in the affidavit required by Section 8.01-316. An affidavit stating (1) that the birth mother is a nonresident and (2) her last known post office address is required by that section. The adoptive parents stated in the affidavit that the birth mother's whereabouts were unknown and not reasonably ascertainable and that her last known address was 16 Snyder Terrace, Uniontown, Pennsylvania 15401. The Snyder Terrace address was the last home of the birth mother. However, the adoptive parents knew that on March 1, 1987, the birth mother was in jail. They testified at trial, and their attorney argued, that they did not know to which jail she had been moved as of the date of the affidavit. Thus, in the affidavit, dated May 9, 1987, they swore that her whereabouts were

not reasonably ascertainable and that they had used due diligence to locate her.

Nevertheless, given that the affiants knew that the birth mother was incarcerated in the Fayette County jail on March 1, 1987, that affidavit should have reflected that knowledge. The affidavit should have supplied both the Snyder Terrace address and the jail address. Moreover, even if the birth mother had been released on bond, transferred to another penal institution, or placed on probation, the clerk of the Fayette County Court or the record custodian at the Fayette County jail could have provided a forwarding address to the affiant or may have forwarded any correspondence to the birth mother. The adoptive mother testified that she called the State Police prior to March 1, 1987, and was provided no information. However, the adoptive parents made no efforts to locate the birth mother within the penal system after March 1, 1987, when they knew she was incarcerated. It is the opinion of this court that the adoptive parents did not exercise due diligence.

The Virginia Supreme Court has recently decided that constructive notice based on a faulty affidavit, where the defendant never received actual notice of the suit, renders a default judgment void for lack of jurisdiction. *Dennis v. Jones*, 240 Va. 12 (1990). The court held that the grounds stated in the affidavit must be true and that the statute authorizing service by publication must be strictly construed. *Id.* at 18. After scrutinizing the averments made in the affidavit, the court held that (1) some of the statements were untrue and (2) the plaintiff had not used due diligence to ascertain the whereabouts of the defendant. *Id.* at 18-19.

The affidavit filed by the adoptive parents in this case is equally flawed. The statement of last known address was inaccurate. Due diligence was not used. This court never had personal jurisdiction over the birth mother in the adoption proceeding. The final order of adoption adjudicating her parental rights is void for this additional reason.

The court is concerned with a number of other irregularities in this adoption proceeding. First, the adoptive parents, in the petition, requested the court to waive all requirements related to the obtaining of consent. Under the former version of § 63.1-221 which was in force at

the time of the adoption proceeding, the court was empowered to waive the requirements of consent *only* on a "direct placement." The adoption at issue here was not a direct placement by the birth parents but a placement through a relative of the birth mother without the birth parents' knowledge or consent. *See* definition of "direct placement" in Va. Code Ann. § 63.1-220 (1984). The court in such a case had no authority to *waive* consent. It was only empowered to enter a final order of adoption without consent pursuant to § 63.1-225(D) after making the required findings.

The second defect is that the petition fails to disclose, as required by § 63.1-221, "Jurisdiction and Proceedings," the circumstances under which the child came to live, and is living, with the petitioner. The petition merely states where the child lived on various dates. *How* the child came to Virginia from Pennsylvania is not addressed. The custody order of the Richmond Juvenile and Domestic Relations District Court, which was attached as Exhibit A to the petition, clearly states that those circumstances were neither resolved nor adjudicated at the time of entry of the custody order. The statute is not clear as to whether such failure to disclose voids jurisdiction. The only opinions addressing the issue, which reach opposite results, are both factually distinct from the present case. *See In the Matter of the Adoption of Paul Nathaniel (Marty) Lewis*, Richmond Circuit Court Opinion, J. Sheffield (February 16, 1979); *contra In the Matter of Adoption of an Infant to be named Jean Lloyd*, Hanover County Circuit Court, J. Simpkins (March 31, 1972).

The disclosure requirement is intended to avoid several possible adoption evils, including unauthorized placement activity and violations of the Interstate Compact on the Placement of Children, Va. Code Ann. § 63.1-219.2 (1984). The court makes no findings as to whether any of the evils intended to be avoided are present in this case. However, under the circumstances at hand, the court should have been informed of the circumstances of placement. In fact, the court was later informed of the circumstances of placement through the Report of Investigation of the Richmond Department of Social Services. The absence of disclosure in the petition is troubling because it suggests an attempt

to effectuate an adoption without following proper procedures.

The next defect in the adoption proceeding is in the order of reference, dated July 21, 1987, the date on which the petition was officially filed. The order recites "that the parental rights of the infant's natural mother were terminated by order of publication . . . pursuant to § 63.1-225(C)(2) . . . ." Of course, an order of publication does not terminate residual parental rights. In an adoption proceeding under § 63.1-225(D), such rights are terminated only by the final order of adoption entered after an appropriate *ore tenus* hearing and findings.

In summary, the adoption proceeding was statutorily defective from its commencement. It is the opinion of this court that the character of the defects does not evidence sufficient intent on the part of the adoptive parents to constitute extrinsic fraud. However, the defects are of such character as to render the final order of adoption void for lack of jurisdiction. This holding is based on:

(1) the failure of the adoptive parents to use due diligence to ascertain the birth mother's location or to include as the last known address in the § 8.01-316 affidavit the jail in which they knew the birth mother was incarcerated on March 1, 1987, thus rendering notice by publication inappropriate;

(2) the failure of the adoptive parents to disclose, in the petition, the circumstances under which the child came to be living in their home;

(3) the failure of the adoptive parents to request, and the failure of the court to hold an evidentiary hearing and make findings of fact as required by § 63.1-225(D); and

(4) the error of the court in finding that the birth mother's rights were terminated by order of publication.

Some of the premises listed above are legal errors that cannot be collaterally attacked, particularly in view of § 63.1-237. However, these errors trouble the court because they amplify the failure of notice which may be collaterally attacked. If actual notice had been given to the birth mother, she might have appeared to point out the errors. Without notice, she had no such opportunity. A subsequent adoption order terminating her

parental rights is void and of no effect. This court has no choice but to set aside the final order of adoption entered on May 26, 1988.

II. *The Petition for Habeas Corpus Is Denied; Custody Will Remain with the Adoptive Parents Pending Further Proceedings.*

The birth mother's petition for *habeas corpus* requests that this court require the adoptive parents to deliver the child to her. Counsel for the birth mother argues that this is the only course open to the court upon invalidating the final order of adoption. The adoptive parents take a different view, with which this court agrees. It is this court's opinion that the decision to overturn the adoption order does not divest the adoptive parents of custody. In *Lowe v. Grasty*, 203 Va. 168, 122 S.E.2d 867 (1961), the court considered a petition for writ of *habeas corpus* in a case where the birth mother sought to set aside a circuit court order granting to a Board of Public Welfare the right to place a child for adoption and terminating parental rights. The court held that the juvenile court order terminating parental rights and therefore the circuit court order entered on appeal therefrom was void because the juvenile court had no authority to enter such an order.[3] *Id.* at 173, 122 S.E.2d at 870. However, the court held that the petition for writ of *habeas corpus* could not be granted because an earlier custody order of the juvenile court was valid. *Id.* at 174, 122 S.E.2d at 871.

It is the opinion of this court that the custody order of January 6, 1987, entered by the Richmond Juvenile and Domestic Relations District Court is valid. The petition for *habeas corpus* is denied. Custody remains with the adoptive parents pending the court's decision as to whether the adoption petition should be granted. In the *Lowe* case, no adoption petition had been filed, so the court ordered the case remanded to the juvenile court to reconsider

[3] Under the law that existed at the time the order was entered, Juvenile and Domestic Relations District Courts had no such power. Of course, the statutes have been amended since that time.

the custody issue. Here the case is properly before the court on an adoption petition. This court must now decide whether the adoption petition should be granted pursuant to the provisions of § 63.1-225(D).[4]

In order to consider the adoption petition, the court reviews the normal procedural steps to be followed in an adoption:

(1) a petition must be filed in the appropriate Circuit Court by the appropriate persons and making appropriate disclosures as required by § 63.1-221;

(2) if consent is not obtained, and parental rights have not been previously terminated, an evidentiary hearing must be held and notice must be given to the nonconsenting parties as required by § 63.1-225(D);

(3) the petition must be referred to the local superintendent of public welfare and the Commissioner of Social Services to investigate and report to the court as required by § 63.1-223;

(4) an interlocutory order of adoption must be entered (unless dispensed with pursuant to § 63.1-229);

(5) the local superintendent of public welfare must cause the child to be visited three times in a six-month period, with no less than ninety days between the first and last visit, and make a written report to the court as required by § 63.1-228; and

(6) if information in compliance with § 32.1-262 has been furnished by the petitioner, the six-month probationary period since the interlocutory order has expired and the court, after considering the report of visitation, is satisfied that the best interests of the child will be served thereby, the court shall enter the final order of adoption pursuant to § 63.1-230. Va. Code Ann. (1987 & Supp. 1989).

---

[4] At the hearing on April 11, 1990, the court asked counsel for both parties whether they agreed that, if the court invalidated the adoption order, the court could then consider the adoption petition based on the evidence presented on that date. Counsel agreed, after some protestation and clarification, that the court could consider the evidence presented at the April 11, 1990, hearing to decide whether the birth mother is withholding consent contrary to the best interests of the child as required under Section 63.1-225(D).

The court has already reviewed the procedural defects that render the original adoption order void. Briefly, they are (a) insufficiency of the petition; (b) failure to give adequate notice to the birth mother; and (c) failure to make required findings of fact at an evidentiary hearing as required by § 63.1-225(D). These defects relate to procedural steps (1) and (2) above. To some extent, the defects have been remedied in the *habeas corpus* proceeding. A full *ore tenus* hearing has been held at which the birth mother, represented by counsel, testified and called witnesses to testify on her behalf. The court is in a position to make the required findings of fact. However, for the reasons stated below, findings of fact will be deferred.

The remaining steps in the procedure outlined above were followed. An order of reference was entered; Richmond Department of Social Services investigated and reported to the court; the department recommended the adoption as long as the court was satisfied with the matter of consent; an interlocutory order was entered; visits were made as required during the probationary period; a report was made thereon, again recommending that the adoption be granted; and a final order of adoption was entered. There was no contention in the *habeas corpus* proceeding that any of these procedures were not followed, or that the adoptive parents were not suitable to adopt.

In order for this court to consider the adoption petition, several steps must now be followed:

(1) the adoptive parents must file an amended petition for adoption;

(2) the birth father, whose identity and whereabouts are now known, must either consent to the adoption or be served with notice of the adoption proceeding pursuant to § 63.1-225(C)(2)(ii);

(3) if the birth father objects, the court must determine, under § 63.1-225(D), whether his consent is withheld contrary to the best interests of the child or is unobtainable;

(4) if the birth father fails to object within twenty-one days of the mailing of notice under Section 63.1-225(C)(2)(ii), his consent is not required;

(5) the birth mother must be served with notice of the amended petition pursuant to § 63.1-225(D)(1) or (2);

(6) a guardian *ad litem* shall be appointed for the child, who will review the adoption file and the transcript of the hearing on April 11, 1990, and make a report to the court opining whether adoption by the adoptive parents in this situation is in the best interests of the child;

(7) if necessary to augment the record or to air the birth father's objections, the parties, including the birth father and the guardian *ad litem* will be given an opportunity to be heard at a future hearing held after the notice as required by steps (2) and (5) above; and

(8) the court, considering the petition in light of the evidence presented at the April 11, 1990, hearing, the deposition testimony introduced into evidence at that hearing, the report of the guardian *ad litem*, and any evidence offered by the parties to augment the record, including the testimony of the birth father, will decide whether the adoption petition shall be granted over the objection of the birth mother or birth parents pursuant to § 63.1-225(D).

I have entered an appropriate order, invalidating the final order of adoption entered on May 26, 1988, denying the petition for *habeas corpus* and allowing the adoptive parents leave to file an amended petition.